BLAINE S. VILES *vs.* AMERICAN REALTY COMPANY.

Kennebec.    Opinion December 2, 1924.

*If an offer of money is made to one, upon certain terms and conditions, and the party to whom it is offered takes the money, though without words of assent, the acceptance is an assent and he is bound by it.*

In the instant case the oral agreement for payment of an additional fifty cents per cord, which the jury found was made by E. E. Amey assuming to act for defendant, was not an independent contract, but a modification as to price of the existing written contract.

The court finds it unnecessary to decide whether the authority of Amey to make the oral agreement is proved, or whether the defendant had clothed Amey with apparent authority to make it, or whether consideration for the oral agreement is shown.

The check for $9,541.22 sent by defendant to plaintiff on October 12, 1917, after Amey's authority to modify the written contract had been denied and payment of the additional fifty cents per cord had been refused, was expressly stated to be in full settlement for the wood delivered at Solon Boom and final payment on contract 523, and its return was requested, if not correct. The acceptance

and use of that check by the plaintiff, without question or objection, bound him to the terms upon which it was offered, and made complete an accord and satisfaction of the demand.   R. S., Chap. 87, Sec. 63.

On report.   An action on account annexed with a money count to recover an additional fifty cents a cord for 9,101.35 cords of pulp wood. Under a written agreement dated September 18, 1916, the plaintiff agreed to sell and deliver to the defendant during the following Summer and Fall, 10,000 cords of pulp wood, more or less, for which defendant agreed to pay $8.00 per cord.   Under the contract 9,101.35 cords were delivered and on October 12, 1917, defendant gave to plaintiff its check for $9,541.22 in full settlement of the balance under the contract, which check was accepted and used by plaintiff.   As a basis for this action plaintiff claimed that the written contract was subsequently modified in a conversation between him and an agent of defendant to the effect that plaintiff was to receive fifty cents more per cord by furnishing an increased amount under the contract.   By agreement the cause was reported to the Law Court to render such final judgment as the legal rights of the parties require.   Judgment for defendant.

The case is fully stated in the opinion.

*Pattangall, Locke & Perkins*, for plaintiff.

*Ryder & Simpson*, for defendant.

SITTING:   CORNISH, C. J., PHILBROOK, DUNN, MORRILL, WILSON, DEASY, JJ.

MORRILL, J.   By written agreement dated September 18, 1916, the plaintiff agreed "to sell to the American Realty Company and to deliver to the boom of the International Paper Company, Solon Mill, in the summer or fall of 1917, a quantity of 4' rough Spruce and 4' Fir pulpwood, containing not less than 75% Spruce.   The amount to be ten thousand cords, more or less at the option of said Blaine S. Viles."

This contract was made and signed in behalf of the defendant by one E. E. Amey, whose name appears in the correspondence and upon the stationery of the company with the title of Assistant to the President.   The plaintiff delivered under this contract 9,101.35 cords of wood and was paid therefor at the contract price of eight dollars per cord.   He claims and the jury has found in answer to a

question submitted to them, that "Everett E. Amey agreed with the plaintiff to pay him fifty cents per cord in addition to the eight dollars specified in written contract dated September 18, 1916, in a conversation with plaintiff held in Portland in the early part of the year 1917, on the promise of the plaintiff to furnish between nine and ten thousand cords."

This action is in assumpsit to recover that fifty cents per cord, and is before the Law Court upon report, upon the writ, pleadings, evidence and finding by the jury for such final judgment "as the legal rights of the parties require."

Before approaching the decision of the case upon the issue which seems to us controlling, it is profitable, if not absolutely necessary, to interpret the written contract between the parties.

Counsel for the plaintiff contends that "the written contract did not obligate Viles to deliver 10000 cords more or less," and was not so intended; that the words "10000 cords" indicate "what the parties had in mind as the amount which conditions would probably warrant delivering. But it obligated no one."

We cannot so construe the contract; such construction is not in harmony with the situation and defined policy of the defendant, nor with the correspondence between the parties. The defendant corporation is a subsidiary of the International Paper Company, maintained by the latter company as a part of its organization for securing an adequate and constant supply of wood for its mills. In the Fall of 1916 its agents were making contracts for its necessary supply of wood for the coming year. It was vital to the successful operation of the mills of the International Paper Company that an adequate and dependable supply of wood should be secured. Under such circumstances it cannot be considered, unless all other constructions fail, that the executives of the defendant would make a detailed written contract, with specifications as to delivery, and scaling and quality, with the intention of not binding either party, of simply affording a market for whatever amount of wood Mr. Viles might see fit to turn into Solon Boom. The executives of large industrial organizations do not conduct business in that way.

In reply to the plaintiff's letter of December 28, 1916, in which he first suggested that the contract left the amount at his option, Amey replied under date of January 2, 1917, expressing surprise at the tenor of the letter, and concluding: "We should not want any wood at more than $8.00 per cord delivered Solon, and we should like to hear

from you definitely in regard to the amount you expect to deliver."
To this letter the plaintiff replied the next day, promising upon his
return from Dead River to "attempt to give you some estimate of
amount of wood we will have for you." He concludes: "When I
wrote you I thought that possibly you would be willing to increase
your price if you could secure *more wood*. Other parties have been
very glad to do this with us because of the conditions that exist this
year." This is not the language of a party whose contract did not
obligate him to any extent, but is the language of a vendor on a tight
market. It is entirely consistent with the construction for which the
defendant contends, that the contract was for the delivery of 10,000
cords within reasonable latitude consistent with good faith, and that
the phrase in the contract,—"at the option of said Blaine S. Viles,"
was an express affirmation that the latitude in amount was to be
exercised within reasonable limits by the plaintiff. Their later cor-
respondence harmonizes with this construction. On January 23,
1917, Amey wrote: "Referring to your letter of January 3rd. We
wish you would advise us at this time how much pulp wood you will
furnish us by river this coming spring." Viles replies the next day:
"We shall probably have 5000 cords more or less of wood for you in
Dead River. . . . I should think, considering conditions, you
would be willing to advance your price some on this short wood."
On February 1, 1917, Gilbert Oakley, Resident Manager of defendant,
wrote: "We wish you would advise us at this time estimate of your
cut on Kennebec Waters this season, which town and from where
landed separately. We would appreciate this information at your
first convenience." Viles replied on February 7, 1917: "Your letter
is at hand on my return from the woods. Our cut of four foot pulp
wood on Dead River will be about as follows:

"From the Buxton Tract and other lots in Eustis, about 6000 cords.

"From Bog Brook Tract and other lots in Dead River Plt. about
2,500 cords."

The above was only 500 cords less than the minimum amount
named in the oral agreement. The record shows quite conclusively
that the agreement for the additional fifty cents a cord, which the
jury has found, was made not earlier than February 7, 1917, and that
it was not an independent contract, but a modification as to price of
the existing contract, a concession on account of existing conditions
of an additional fifty cents per cord, for the delivery of substantially

the same amount of wood, in the written contract specified at 10,000 cords more or less, in the oral modification of that contract specified as nine to ten thousand cords.

In the view which we take of this case we need not decide whether the authority of Amey to make the oral agreement is proved, or whether the defendant corporation had clothed Amey with apparent authority to make it; nor need we decide whether consideration for the oral agreement is shown.    See *Savage* v. *No. Anson Mfg. Co.*, 124 Maine, 1, 8.

Amey was discharged by the American Realty Company in July, 1917, and had died before the trial of this case.    The alleged oral agreement to pay the additional fifty cents per cord was first called to the attention of George M. Stearns, then President of the defendant company, by the plaintiff, early in August, 1917.    This is the first knowledge of the oral agreement attributed to any official of the defendant, except Amey.    Mr. Stearns promptly denied any authority on Amey's part to make the modification of the written contract, and positively refused to pay the additional fifty cents.    They had a second interview placed by Viles as after October 12, in which the denial of liability was repeated; at this latter conversation, according to Mr. Viles, Mr. Stearns said that he would take the matter up with the directors.    All later interviews have been between counsel.

The defendant has pleaded by brief statement that the demand in suit was settled by the plaintiff by receipt of $9,541.22 from the defendant, which was received by plaintiff in accord and satisfaction of said demand, under R. S., Chap. 87, Sec. 63.

The court is of the opinion that this defense is sustained by the record before us.    The rule of law is familiar and has been so recently stated by this court that an extended restatement here is not necessary.    *Fuller* v. *Smith*, 107 Maine, 161, 165; *Chapin* v. *Little Blue School*, 110 Maine, 415, 420; *Bell* v. *Doyle*, 119 Maine, 383.    Briefly, "it must be shown that the debtor tendered the amount in satisfaction of the particular demand, and that it was accepted by the creditor as such." *Fuller* v. *Smith*, supra.    "If an offer of money is made to one, upon certain terms and conditions, and the party to whom it is offered takes the money, though without words of assent, the acceptance is an assent de facto and he is bound by it.    The acceptance of the money involves the acceptance of the condition.    Under such circumstances, the assent of the creditor to the terms proposed by the debtor will be implied." *Anderson* v. *Standard Granite Co.*,

92 Maine, 429, 432; 69 Am. St. Rep., 522. *Price* v. *McEachern,* 111 Maine, 573. *Richardson* v. *Taylor, Admr.,* 100 Maine, 175. The offer and its terms, by the one party, and the acceptance by the other party are ordinarily questions of fact for the jury, unless upon the evidence only one inference can be drawn. *Bell* v. *Doyle,* supra. *Horigan* v. *Chalmers Motor Co.,* 111 Maine, 111, 114. In the instant case submitted on report, the court exercises the functions of a jury.

At the time of the interview in August between plaintiff and Mr. Stearns, the wood had been delivered. That interview could have left no doubt in the mind of Mr. Viles as to Mr. Stearns' attitude about the agreement for the additional fifty cents per cord. He positively and unequivocally denied liability of the defendant therefor, and refused to pay it. There is no contention that the attitude of Mr. Stearns or of the company changed. On October 12, 1917, the American Realty Company issued its voucher check to the plaintiff for $9,541.22; on the back of this check the following words appear: "This check is in full settlement of the items shown below, if not correct please return."

"Per statement attached,............................... $9541.22"

"Endorsements below"

"For deposit only to credit of Blaine S. Viles."

The following statement accompanied this check:

"AMERICAN REALTY COMPANY,
                    Portland, Maine,....................................
                              To Blaine S. Viles, Dr.
                                   Augusta, Me.

| | | | |
|---|---|---|---|
| Cont. 523. | Kennebec. | | |
| 9101.35 cds. R @ 8.00 | | | 72810.80 |
| Less Ck. Jan. 26 | | 2931.84 | |
| Scaling | | 29.00 | |
| " Ck Feb. 14 | | 4673.32 | |
| " " " 27 | | 7194.00 | |
| " " Mar. 15 | | 5000.00 | |
| " " Apr. 10 | | 11457.52 | |
| " " May 2 | | 22486.68 | |
| " " July 3 | | 9497.22 | 63269.58 |
| | | | 9541.22 |

Bal. due Del. at Solon Boom
  (Final Payment on Cont. 523)"

This check was received and used by Mr. Viles without question or objection. It is difficult to perceive how in ordinary business dealings the offer of this check in settlement of the unsettled account for wood, and that it was offered upon the terms and conditions, could have been made plainer. It was stated to be in full settlement, and the request was made that it be returned, if not correct. The conversation with Mr. Stearns, and the latter's attitude towards Amey's agreement, must have been fresh in the mind of Mr. Viles. He must be considered to have accepted the check upon the terms upon which it was offered, and is bound by such acceptance. The later interview with Mr. Stearns in which the latter repeated his denial of the company's responsibility for Amey's agreement, cannot affect this result, even if Mr. Stearns did say, as Mr. Viles testified, "that he would take it up with the directors." The accord and satisfaction was complete before that interview. The case cannot be distinguished in principle from *Anderson* v. *Standard Granite Co.*, supra, and is easily distinguishable from *Chapin* v. *Little Blue School*, supra, in which non-acceptance, in full settlement, of the check forwarded was established.

The proof in the instant case measures up to the standard of being "clear and convincing that the creditor did understand the condition on which the tender was made, or that the circumstances under which it was made were such that he was bound to understand it." *Fuller* v. *Smith*, 107 Maine, 161, 166-7.

*Judgment for the defendant.*